UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STEPHEN T. GREENBERG, M.D., P.C.
d/b/a GREENBERG COSMETIC
SURGERY, and STEPHEN T.
GREENBERG, M.D.,

                          Plaintiffs,

    -against-

PERFECT BODY IMAGE, LLC d/b/a
PERFECT BODY LASER AND
AESTHETICS, and JOHN DOE 1-5,

                          Defendants.
------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

17-CV-5807 (SJF) (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint dated October 4, 2017, Plaintiffs Stephen T. Greenberg,

M.D., P.C. doing business as Greenberg Cosmetic Surgery ("Greenberg Cosmetic")

and Stephen T. Greenberg, M.D. ("Dr. Greenberg," and together with Greenberg

Cosmetic, "Plaintiffs") commenced this action against Perfect Body Image, LLC doing

business as Perfect Body Laser and Aesthetics ("Defendant

or "Perfect Body"), asserting claims under the Lanham Act, 15 U.S.C. § 1051 *et seq*.,

and N.Y. Civ. Rights Law §§ 50, 51, and for unfair competition under New York law.

*See* Complaint ("Compl."), Docket Entry ("DE") [1].  Presently before the Court, on

referral from the Honorable Sandra J. Feuerstein for Report and Recommendation,

are:  (i) Plaintiffs' motion for summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure ("Fed. R. Civ. P.") ("Plaintiffs' Motion"), DE [64]; and (ii)

Perfect Body's cross motion for summary judgment dismissing this action in its

entirety ("Defendant's Motion").  DE [66].  For the reasons set forth herein, the Court respectfully recommends:  (i) denying Plaintiffs' Motion its entirety; and (ii) granting Defendant's Motion and dismissing this action with prejudice.

## I.    Background

### A.    **Relevant Facts**

The    following    facts    are    taken    from    the    parties'    pleadings, declarations/affidavits, exhibits, and respective Local Rule 56.1 statements.  Except where indicated, these facts are not in dispute.

Dr. Greenberg is a plastic surgeon, maintaining offices, *inter alia*, on Long Island.  *See* Plaintiffs' Local Rule 56.1 Statement ("Pltfs.' 56.1"), DE [64-2], ¶¶ 1-2; *see also* Defendant's Response to Pltfs.' 56.1 ("Def.'s Reply 56.1"), DE [64-18], ¶¶ 1-2. Dr. Greenberg operates his practice as Plaintiff Stephen T. Greenberg, M.D., P.C. doing business as Greenberg Cosmetic Surgery.  *See* Compl. ¶ 9.  Plaintiffs perform invasive surgical procedures as well as non-invasive laser treatments at their facilities.  *See* Defendant's Local Rule 56.1 Statement [in support of its cross motion for summary judgment] ("Def.'s 56.1"), DE [66-1], ¶¶ 9-10.  In addition to his medical practice, Dr. Greenberg has authored a book on cosmetic surgery, appeared on television programs, and hosts a radio show.  *See* Pltfs.' 56.1 ¶3, Exs. B-G; *see also* Def.'s Reply 56.1 ¶ 3.  Perfect Body, which does not employ medical doctors and is in no way affiliated with Plaintiffs, provides "non-surgical and non-invasive aesthetic services, including, among other things, laser treatments."  *See* Def.'s Reply 56.1 ¶ 4; Def.'s 56.1 ¶ 12; *see also* Affidavit of Patrick Scomello in Opposition to Plaintiffs'

Motion for Summary Judgment ("Scomello Aff."), DE [64-37], ¶¶ 3-4.[1]  Stephen T. Greenberg is not the only medical doctor with that surname practicing medicine in his locale.  Indeed, Stephen's brother, Burt Greenberg, is also a plastic surgeon who operates on Long Island and performs "laser treatments."  *See* Affirmation of Doreen J. Shindel in Opposition to Plaintiffs' Motion for Summary Judgment ("Shindel Opp. Aff."), DE [64-19], ¶ 13, Ex. 10, DE [64-30].  In addition, Dr. William Greenberg is a licensed physician who performs "laser treatments" in New York.  *See id*. ¶ 14, Ex. 11, DE [64-31].  Dr. Greenberg has no registered trademarks for any iterations of his name.  *See* Def.'s 56.1 ¶¶ 1-5.

In September 2012, Perfect Body retained NASIKS Productions Inc. ("NASIKS") – an internet marketing agency that, among other things, manages its clients' search engine optimization – to assist in its online marketing, namely, concerning advertising with Google, LLC ("Google").  *See* Scomello Aff. ¶ 7; *see also* Affidavit of Nevin Soric in Opposition of Plaintiffs' Motion for Summary Judgment ("Soric Aff."), DE [64-35], ¶ 2.[2]  Businesses can utilize Google's search engine tools through a program called Google Ads to purchase select keywords to help target specific customers performing various online searches.  *See* Soric Aff. ¶ 6.  Thus, companies can bid on various keywords hoping to increase the likelihood of a given advertisement appearing when a search term is entered.  *See id*.  The following

---

[1] Mr. Scomello is the sole managing partner of Perfect Body and is in charge of its advertising and marketing.  *See* Scomello Aff. ¶ 1.

[2] Mr. Soric is the President of NASIKS and has provided marketing consulting services to Defendant since 2012.  *See* Soric Aff. ¶¶ 1, 3.

terminology relates to the efficacy of keyword searches: (i) an "impression" occurs when an advertisement appears in the search results due to a purchased keyword being entered; (ii) a "click" refers to instances where a user clicks on a business's advertisement, thereby being redirected to the linked website; and (iii) a "conversion" occurs either when a user clicks an advertisement and then performs some activity once reaching the website or if a user phones the business through the link provided by the Google ad from a mobile device. *See id.* ¶ 6-7.

Within Google Ads, there are two types of keyword related advertisements – both of which were used by Perfect Body in connection with the events leading to this litigation. First, there are "static" advertisements, which refer to links displayed in search results where the headline remains the same regardless of the parameters entered. *See id.* ¶ 11. Additionally, there are "keyword insertion" advertisements, which update the text in the link shown to include the language matching a customer's search terms. *See id.* ¶ 12. Thus, if someone enters a purchased keyword in their search, Google uses computer code to automatically replace the text in the advertisement with the term that triggered the link's display. *See id.*

In October 2016, Perfect Body began an online marketing campaign entitled "competitors" whereby they bid on and purchased search keywords from Google in an effort to increase exposure to potential customers (the "Campaign"). *See* Scomello Aff. ¶ 8; Soric Aff. ¶ 8. As part of the Campaign, Defendant purchased the keywords "Dr. Greenberg," "Doctor Greenberg," and variations thereof. *See* Scomello Aff. ¶ 8; Soric Aff. ¶ 8. Defendant did not, however, bid on the rights to "Stephen T.

Greenberg, M.D." or any other use of Dr. Greenberg's first name or middle initial. *See* Def.'s 56.1 ¶ 22.   At the heart of the instant dispute is one advertisement implemented by Perfect Body, which used the keyword insertion feature to display "Dr. Greenberg" in the link to its website.   *See* Soric Aff. ¶ 13.   The following is a screenshot demonstrating how Defendant's keyword insertion advertisement was displayed in Google's search results (the "Advertisement"):

*See* Declaration of Scott J. Kreppein in Support of Plaintiffs' Motion for Summary Judgment ("Kreppein Decl."), DE [64-1], ¶ 4(j), Ex. J, DE [64-13].  The Court notes that this screenshot of the purportedly infringing conduct provided by Plaintiffs is unauthenticated and presented without foundation.  Plaintiffs merely indicate that they attached an "Advertisement" as an exhibit, while providing no further explanation.  *See id*.  In any event, the various submitted iterations of the Advertisement (provided in support and opposition of the respective motions) at issue illustrate the same general scenario, namely, a link to Defendant's website with "Doctor Greenberg" or "Dr. Greenberg" in the headline, followed by a separate link to Plaintiffs' own website below the complained of Advertisement.  *See, e.g.*, Shindel Opp. Aff., Ex. 13, DE [64-33].  Each time the Advertisement was displayed in Google's search results, it was labeled by Google as an "Ad."  *See* Soric Aff. ¶ 15.  When a user clicked on the Advertisement, they would be redirected to Perfect Body's website.  *See id*. ¶ 16.  The Court is not aware of any allegations or evidence that Defendant's website itself referenced Dr. Greenberg once a user clicked through to it.

During the approximately 14 months that the Campaign was active – before Perfect Body suspended it on December 7, 2017 – 36,654 "impressions" were made, 1,161 "clicks" occurred, and ten "conversions" happened.  *See* Def.'s 56.1 ¶ 24; Pltfs.' 56.1 ¶ 6; Soric Aff. ¶ 14.  The foregoing data appears to be derived from a response to an information subpoena served on Google by Plaintiffs.  *See, e.g.*, Shindel Opp. Aff. ¶ 9, Ex. 7 (the "Subpoena"), DE [64-27].  The Subpoena sought information as to the results of the Campaign on searches for "Doctor Greenberg" and "Dr. Greenberg."  *See*

*id*.  In support of their motion, Plaintiffs submitted excerpts from Google's response, *see* Kreppein Decl., Exs. M & N, DEs [64-16], [64-17], whereas in support of its motion, Perfect Body included thousands of pages purporting to be the complete Subpoena response.  *See* Affirmation of Doreen J. Shindel in Support of Defendant's Motion for Summary Judgment ("Shindel Support Aff."), DE [66-3], ¶ 12, Ex. 11, DEs [67], [68].  Neither party tries to describe the data or explain its significance in any meaningful way.  In any event the parties agree as to the amount of impressions, clicks, and conversions that occurred during the Campaign.  *See* Def.'s 56.1 ¶ 24; Pltfs.' 56.1 ¶ 6.  As such, the Court accepts these conclusions on their face for the purposes of this motion.

As a result of the Campaign, Plaintiffs sent Defendant a cease and desist letter on August 31, 2017 demanding that Perfect Body stop engaging in the foregoing conduct.  S*ee* Kreppein Decl., Ex. K, DE [64-14].  In response, Defendant asserted that the Campaign was lawful.  *See id*., Ex. L, DE [64-15].  Thus, the instant litigation ensued.

## B.    <u>Relevant Procedural History</u>

As set forth above, this action was commenced on October 4, 2017, and Perfect Body suspended the Campaign on December 7, 2017.  *See* DE [1]; *see also* Soric Aff. ¶ 14.  The Complaint asserts three causes of action for:  (i) trademark infringement pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (ii) a violation of the right to publicity under Sections 50 and 51 of the New York Civil Rights Law; and (iii) common law unfair competition.  *See* Compl.  Defendant answered the Complaint

on December 18, 2017, *see* DE [12], at which point discovery commenced. *See* DEs [15], [16].   After Judge Feuerstein initially extended the original July 9, 2018 discovery deadline to August 9, 2018, *see* July 20, 2018 Electronic Order, she denied Defendant's further requests to expand the discovery window. *See* DEs [43], [44]. Subsequent to the parties initially having their motions for summary judgment denied for failure to comply with Judge Feuerstein's Individual Rules, *see* October 3, 2018 Electronic Order, the parties re-filed their respective motions on October 19, 2018. *See* DEs [64], [66].   On October 25, 2018, Judge Feuerstein referred both motions to this Court for Report and Recommendation. *See* October 25, 2018 Order Referring Motion.   Plaintiffs' Motion seeks summary judgment (apparently as to liability only) with respect to their three causes of action. *See* DE [64].   Defendant's Motion requests summary judgment dismissing this action in its entirety. *See* DE [66].

## II.   Legal Standard for Summary Judgment

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004).  In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor

of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party"). In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6 n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment").

## III.    Discussion

Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends:  (i) denying Plaintiffs' Motion its entirety; and (ii) granting in Defendant's Motion and dismissing this action with prejudice.

### A.    The Lanham Act

Section 43(a) of the Lanham Act provides a cause of action for false designation of origin against:

> [a]ny person who … in connection with any goods or services … uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which … (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristic, qualities, or geographic origin of his of her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  "[T]he same legal test applies to claims for trademark infringement and false designation under the Lanham Act." *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 283 (S.D.N.Y. 2018) (collecting cases).  "To prevail on a claim of trademark infringement, a plaintiff must show, first, that its mark merits protection, and, second, that the defendant's use of a similar mark is likely to cause consumer confusion." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir.

2004) (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993); *see also Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014) (to prevail on an infringement claim, a plaintiff must prove that it has a valid mark entitled to protection and that the defendant's use of the mark is likely to cause confusion) (internal citations omitted).

          i.  <u>Validity of the Mark</u>

In assessing whether Plaintiffs have any protectable marks, the Court initially recognizes that "[b]oth registered and unregistered marks can constitute valid trademarks under § 43(a)." *CJ Prod. LLC v. Snuggly Plushez LLC,* 809 F. Supp. 2d 127, 150 (E.D.N.Y. 2011). If a mark is registered with the Patent and Trademark Office, "there is a rebuttable presumption that the mark is protectable." *DeClemente v. Columbia Pictures Indus., Inc.,* 860 F. Supp. 30, 42 (E.D.N.Y. 1994) (internal citation omitted). Section 43(a), however, "is a broad federal unfair competition provision" which affords protection to unregistered marks that would otherwise qualify for registration. *Van Praagh*, 993 F. Supp. 2d at 301-02 (internal citations omitted). "To be valid and protectable, a mark must be capable of distinguishing the [services] it marks from those of others." *CJ Prod. LLC,* 809 F. Supp. 2d at 150 (quoting *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999)). "The central consideration in assessing a mark's protectability, namely its degree of distinctiveness, is also a factor in determining likelihood of confusion." *Id.* (quoting *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006)).

In assessing whether a mark is distinctive and, thus, entitled to protection, courts in the Second Circuit use four categories of classification, in ascending order of strength: (i) generic; (ii) descriptive; (iii) suggestive; and (iv) arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976); *see also CJ Prod. LLC,* 809 F. Supp. 2d at 150 (courts in the Second Circuit reference *Abercrombie's* classification scheme when determining a mark's distinctiveness).

> A generic mark is generally a common description of goods and is ineligible for trademark protection.... *A descriptive mark describes a product's features, qualities or ingredients in ordinary language, and may be protected only if secondary meaning is established....* A suggestive mark employs terms which do not describe but merely suggest the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of goods.... Fanciful or arbitrary marks are eligible for protection without proof of secondary meaning and with ease of establishing infringement.

*Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 307 F. Supp. 3d at 287 (internal quotations and citations omitted) (emphasis added). "A mark can be descriptive in two ways. It can literally describe the product, or it can describe the purpose or utility of the product." *DeClemente*, 860 F. Supp. at 43 (citing *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1040 (2d Cir. 1992)). It is well-established in the Second Circuit that surnames are classified as descriptive marks. *Rosenthal A.G. v. Ritelite, Ltd.*, 986 F. Supp. 133, 139 (E.D.N.Y. 1997) (collecting cases); *see also DeClemente*, 860 F. Supp. at 43 ("Surnames or personal names used as trademarks are generally regarded as descriptive marks") (internal citations omitted). Accordingly, a surname is only entitled to protection if it has acquired "secondary meaning," which occurs "when, through use, it becomes uniquely associated with a

single source and the public is moved in any degree to buy an article because of its source." *Rosenthal A.G.* 986 F. Supp. at 139-40 (internal quotations and citations omitted); *see also Van Praagh*, 993 F. Supp. 2d at 302 ("Personal names used as trademarks are generally regarded as descriptive terms and are thus protected only if, through usage, they have acquired distinctiveness and secondary meaning") (citing *Shear Contractors, Inc. v. Shear Enterprises & Gen. Contracting*, No. 09-cv-621, 2010 WL 4781335, at *3 (N.D.N.Y. Nov. 16, 2010)).

"Proof of secondary meaning entails vigorous evidentiary requirements." *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985) (internal brackets, quotations, and citations omitted); *see also DeClemente*, 860 F. Supp. at 44 ("Secondary meaning is an essentially factual determination, proof of which entails vigorous evidentiary requirements") (internal quotations and citations omitted).  In determining whether a mark has acquired secondary meaning, courts in the Second Circuit consider number of non-exhaustive factors:  "(1) advertising expenditures; (2) sales success; (3) unsolicited media coverage; (4) attempts to plagiarize the mark; (5) the length and exclusivity of the mark's use; and (6) consumer studies linking the name to a source." *CJ Prod. LLC,* 809 F. Supp. 2d at 150-51 (citing *Thompson Med. Co.*, 753 F.2d at 217).  "No one factor is determinative, and not all factors need to be proved." *Id.* at 151 (internal citations omitted).

Here, it is undisputed that Dr. Greenberg's name is not a registered trademark, *see* Def.'s 56.1 ¶¶ 1-5, and as such there is no presumption of validity and Plaintiffs must establish secondary meaning to gain protection.  To that end, the

Court concludes that Plaintiffs fall far short of meeting the "vigorous evidentiary requirement" of demonstrating that Dr. Greenberg's surname has gained secondary meaning. Although the Court recognizes that secondary meaning is typically a factual issue, the lack of evidentiary support submitted by Plaintiffs in support of their motion is such that no reasonable factfinder could rule in their favor. Notwithstanding Plaintiffs' conclusory assertion that Dr. Greenberg is a "well-known plastic surgeon," *see* Plaintiffs' Memorandum of Law in Support of Summary Judgment ("Pltfs.' Mem."), DE [64-2], at 3, the evidence submitted in support of their motion fails to substantiate that position. Indeed, Plaintiffs' seven paragraph Local Rule 56.1 Statement and supporting exhibits are devoid of any proof concerning advertising expenditures, sales success, the length and exclusivity of the mark's use, or consumer studies linking Dr. Greenberg's name to his services. Insofar as Plaintiffs claim that Dr. Greenberg has received media coverage, the scattered screenshots purporting to link articles from his own website are self-serving and insufficient. *See* Kreppein Decl., Ex. G, DE [64-10].

Dr. Greenberg has published a book, *see* Kreppein Decl., Ex. B, DE [64-5], yet he provides no data on the commercial success or recognition thereof. Plaintiffs also assert that Dr. Greenberg is a radio and television personality, *see id.*, Exs. D-F, DEs [64-7] – [64-9]. With respect to television, Plaintiffs contend that "Dr. Greenberg was a cast member on the Bravo television series, 'Secrets and Wives," *see* Pltfs.' Mem. at 3, yet the mere screenshots they attach to their motion indicate that Dr. Greenberg's *wife* was the cast member on the program (with, perhaps, ancillary appearances from

Dr. Greenberg himself). *See* Kreppein Decl., Ex. D, DE [64-7].[3]  Concerning Plaintiffs'

claim that Dr. Greenberg is a radio "personality" as a result of his "weekly radio

show," their evidence is again meager as they only attach a screenshot implying that

as few as seven total radio shows have occurred. *See id.*, Ex. E, DE [64-8].  Plaintiffs

present no evidence of listenership or any further details on the scheduling of Dr.

Greenberg's purported radio appearances.  In fact, Plaintiffs' Motion does not include

any citation to deposition testimony or a single factual affidavit substantiating Dr.

Greenberg's alleged notoriety.  Accordingly, the Court concludes that Dr. Greenberg

has failed to meet the evidentiary burden required to establish secondary meaning

for his surname.  For this reason alone, Plaintiffs' Lanham Act claim fails.

### ii.    Likelihood of Confusion

Assuming *arguendo* that Dr. Greenberg's surname is entitled to at least some

protection, the Court nevertheless concludes that Perfect Body's Campaign is, as a

matter of law, unlikely to cause confusion amongst consumers.  Courts in the Second

Circuit consider "a series of nonexclusive factors likely to be pertinent in addressing

the issue of likelihood of confusion" outlined in the seminal case of *Polaroid Corp. v.

Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961).  *Virgin Enterprises Ltd. v. Nawab*,

335 F.3d 141, 146 (2d Cir. 2003) (collecting cases).

> The *Polaroid* factors are: (1) the strength of the mark; (2)
> the degree of similarity between the two marks; (3) the
> proximity of the [services]; (4) the likelihood that the prior
> owner will bridge the gap; (5) actual confusion; (6) the

---

[3] Plaintiffs' purported "Television Appearance List" also fails to establish secondary meaning, as they merely present additional screenshots of "Television Segments" from Greenberg Cosmetic's website with no explanatory details on the specifics of these appearances.  *See* Kreppein Decl., Ex. F, DE [64-9].

defendant's good faith in adopting its mark; (7) the quality
of the defendant's [services]; and (8) the sophistication of
the buyers.

*HomeVestors of Am., Inc. v. Fantini*, No. 18-cv-3741, 2018 WL 4783969, at *2

(E.D.N.Y. Oct. 1, 2018) (citing *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113,

117 (2d Cir. 1999) (internal quotations omitted). "No single [*Polaroid*] factor is

dispositive, nor is a court limited to consideration of only these factors. *Id.* (citing

*Brennan's, Inc.*, 360 F.3d at 130)). "The Court's resolution of each separate [*Polaroid*]

factor is a finding of fact, while the balancing of the factors is a conclusion of law."

*Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 307 F. Supp. 3d at 284 (citing

*Star Indus. v. Bacardi & Co., Ltd.*, 412 F.3d 373, 384 (2d Cir. 2005)).

Within the context of online advertising through the purchase of keywords,

"[t]he Second Circuit has yet to adopt a particular approach for determining the issue

of consumer confusion…." *CJ Prod. LLC*, 809 F. Supp. 2d at 158. Thus, courts

continue to consider the *Polaroid* factors when assessing infringement within the

realm of keyword advertising. *See id.* (collecting cases). In this regard, however,

"[v]irtually no court has held that, *on its own*, a defendant's purchase of a plaintiff's

mark as a keyword term is sufficient for liability." *Alzheimer's Disease & Related

Disorders Ass'n, Inc.*, 307 F. Supp. 3d at 284 (emphasis added) (collecting cases).

Accordingly, the "ultimate inquiry … [remains] whether there exists a likelihood that

an appreciable number of ordinarily prudent purchasers will be misled, or indeed

simply confused as to the source of the [services] in question." *Thompson Med. Co.*,

753 F.2d at 213 (internal quotation, brackets, and citation omitted); *see also Texas

Chicken & Burgers, LLC v. NYQ Prop., LLC*, No. 17-cv-976, 2018 WL 6718843, at *7

(E.D.N.Y. Nov. 1, 2018) ("The crux of the inquiry is whether an appreciable number of ordinarily prudent purchasers would be confused as to the source of the [services] which they are purchasing or in distinguishing one product from another") (internal quotation and citation omitted).

As discussed below, the Court concludes as a matter of law that it is unlikely that any appreciable number of ordinarily prudent purchasers would be confused by Perfect Body's Campaign, especially given the lack of any direct evidence of actual consumer confusion. In support of their motion, Plaintiffs rely almost entirely unsubstantiated assertions, and fail to submit any deposition testimony, factual affidavits, consumers surveys, or the like, by which a reasonable factfinder could conclude that Defendant has engaged in infringing conduct. The Court first analyzes the *Polaroid* factors before turning to additional relevant considerations.

a.   <u>Strength of the Mark</u>

When assessing the strength of the mark, the Court conducts the same analysis as examining the mark's validity. *See HomeVestors of Am., Inc.*, 2018 WL 4783969, at *2 (citing *Time, Inc.*, 173 F.3d at 117); *see also CJ Prod. LLC,* 809 F. Supp. 2d at 150 (the distinctiveness factor of a mark's protectability is also relevant for the likelihood of confusion element). As discussed above, Plaintiffs have failed to establish that Dr. Greenberg's surname has acquired the secondary meaning needed to be entitled to protection. *See* Section III(A)(i), *supra*. By way of example, "[c]onsumer surveys can be the most persuasive evidence of secondary meaning because they are direct evidence of the relevant consumer groups' association of a

service with a particular source." *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 320 (S.D.N.Y. 2012) (internal citation omitted). Here, however, no such surveys linking Dr. Greenberg's name to his services were performed. Although Dr. Greenberg has authored at least one book and appeared in some capacity on television and radio, the extent to which these events have gained him any notoriety in connection with his cosmetic surgery services is unsubstantiated. Moreover, Plaintiffs have not established that consumers associate Dr. Greenberg with Stephen as opposed to, say, his brother Burt, another plastic surgeon practicing on Long Island, or a third Dr. William Greenberg also providing similar services in New York. *See* Shindel Opp. Aff. ¶¶ 13-14, Exs. 10-11. Because the purported mark is weak due to a lack of secondary meaning, the Court concludes that this factor weighs in favor of Perfect Body.

### b.    Degree of Similarity Between the Two Marks

"Under this factor, the Court analyzes the extent of similarity between the marks to determine whether it is likely to cause confusion among consumers in the marketplace." *CJ Prod. LLC,* 809 F. Supp. 2d at 154 (citing *Kraft Gen. Foods, Inc. v. Allied Old English, Inc.,* 831 F. Supp. 123, 130 (S.D.N.Y.1993)). Here, insofar as Plaintiffs claim that "Dr. Greenberg" is the protected mark, the use by Perfect Body is virtually identical. Specifically, Defendant's Campaign involved purchasing "Dr. Greenberg" (or similar iterations thereof) as a Google search keyword, which resulted in at least some links being displayed with his name appearing in the headline. *See* Soric Aff. ¶¶ 8-13. Notwithstanding the fact that the remainder of Perfect Body's

Advertisement differed from Plaintiffs' own link, Defendant's use of Dr. Greenberg's surname, despite no affiliation to anyone by that name, weighs in Plaintiffs' favor.

c.   Proximity of the Services

"The 'proximity-of-the-[services]' inquiry concerns whether and to what extent the two [services] compete with each other." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996) (internal citation omitted). Once again, the record in this regard is scant, and so the Court cannot fully ascertain the extent of competition between the parties. Specifically, Plaintiffs' Rule 56.1 Statement merely states that Dr. Greenberg is a medical doctor who maintains a plastic surgery practice, and provides no details on Defendant's services, other than to say it is not affiliated with Greenberg Cosmetic. *See* Pltfs.' 56.1 and Def.'s Reply 56.1. ¶¶ 1-2, 4. In support of its cross motion, Perfect Body does little to further illustrate the services provided by either party. Defendant claims that Plaintiffs provide "invasive and surgical procedures" in addition to "non-invasive laser treatments," and that Perfect Body provides "non-invasive, aesthetic services, including, among other things, laser treatments." Def.'s 56.1 ¶¶ 9-12. Neither party endeavors to clarify what precise procedures – surgical or otherwise – either business performs, nor do the parties explain what "laser treatments" they are referencing. Thus, although it is reasonable to deduce that there is likely some overlap in the services provided, the Court is unable to assess this issue given the record before it. Accordingly, this factor does not weigh in favor of either side.

d.    <u>Bridging the Gap</u>

"'Bridging the gap' concerns the likelihood that a plaintiff 'not in direct competition with the defendant at the time a suit is brought will later expand the scope of its business so as to enter the defendant's market.'" *Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 307 F. Supp. 3d at 292 (citing *Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.,* 778 F. Supp. 2d 261, 268 (E.D.N.Y. 2011)). This factor "is inapplicable when the plaintiff and defendant already occupy the same market. *See Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743 (2d Cir. 1998). Here, as discussed in the preceding paragraph, the Court is unsure exactly what services the parties provide. In any event, it appears Plaintiffs and Defendant operate in the same market by virtue of providing "non-invasive … laser treatments." *See* Def.'s 56.1 ¶¶ 10, 12; *see also* Plaintiffs' Reply Memorandum of Law in Support of Motion for Summary Judgment ("Pltfs.' Reply"), DE [64-39], at 11 ("The parties already directly compete…"). Accordingly, this factor similarly does not weigh in either side's favor.

e.    <u>Actual Confusion</u>

"Evidence of actual confusion is 'particularly relevant' to whether a likelihood of confusion exists." *CJ Prod. LLC,* 809 F. Supp. 2d at 154 (quoting *Streetwise Maps, Inc.*, 159 F.3d at 745); *see also Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 307 F. Supp. 3d at 293 ("The Second Circuit has made clear the prime importance of actual confusion as a factor, even if no one factor is dispositive"). Evidence of confusion must be viewed in its evidentiary context and be causally related to the

20

allegedly infringing behavior to be unlawful.  *See id.* (internal citations omitted). "However, 'a likelihood of confusion is actionable even absent evidence of actual confusion.'"  *CJ Prod. LLC,* 809 F. Supp. 2d at 154 at 154-55 (quoting *1–800 Contacts, Inc. v. WhenU.com,* 309 F. Supp. 2d 467, 491 (S.D.N.Y.2003), *rev'd on other grounds,* 414 F.3d 400, 406 (2d Cir.2005)).

Here, the lack of *any* evidence demonstrating that any consumer was confused by the Campaign undermines Plaintiffs' infringement claim.  As discussed above, Plaintiffs did not conduct a single consumer survey, nor did they submit any testimonial evidence to support the conclusion that prospective customers were confused.  *Cf. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 307 F. Supp. 3d at 294-95 ("most importantly, the [plaintiff] presented … survey evidence and opinion testimony…. [S]urvey evidence is not evidence of actual confusion, [but] provide[s] circumstantial evidence of the likelihood of confusion … where evidence of confusion is not available or is not persuasive").  Conversely, in opposing Plaintiffs' Motion and arguing for its own entitlement to summary judgment, Perfect Body stated that it was "not aware of any potential clients/consumers who have advised they contacted Defendant with the mistaken impression they were contacting [Plaintiffs]" nor that it had seen any evidence indicating the opposite was true.  *See* Scomello Aff. ¶ 11.  On Reply, Plaintiffs make no attempt to rebut this contention, anecdotally or otherwise.

Instead, Plaintiffs rely entirely on circumstantial evidence in making the untenable leap that there is "undisputably [*sic*]" evidence of confusion. *See* Pltfs. Reply at 7.  Specifically, Plaintiffs assert that – because internet browsers searching

21

for Dr. Greenberg ultimately visited Perfect Body's website – the 1,161 "clicks" and ten "conversions" that occurred while the Campaign was active, *see* Def.'s 56.1 ¶ 24; Pltfs.' 56.1 ¶ 6; Soric Aff. ¶ 14, conclusively establishes actual confusion and, in turn, liability. *See*, *e.g.*, Pltfs.' Mem. at 9 ("there can be no genuine dispute that Defendant's [Campaign] was likely to cause confusion…. The Google search terms provide evidence of actual confusion").  The Court disagrees.  Plaintiffs fail to causally link the "clicks" to confusion.  It is equally likely (absent contrary evidence from Plaintiffs) that an individual browsing for cosmetic services began by searching Dr. Greenberg's name, and then visited Defendant's website after seeing its advertisement, understanding that they were indeed visiting a site other than Plaintiffs'.  Moreover, insofar as Plaintiffs contend that the raw data provided by Google in response to the Subpoena demonstrates confusion, their failure to provide explanatory testimony describing that data, and mere reliance on the results previously mentioned, breaks any causal chain that would permit such a conclusion.  Indeed, as Defendant points out, Plaintiffs fail to specify whether the "clicks" came from the "keyword insertion" Advertisement at issue, rather than the other "static" links used in the Campaign. *See* Def.'s Memorandum of Law in Further Support of its Motion for Summary Judgment ("Def.'s Reply"), DE [71], at 6.  Accordingly, this factor weighs in Perfect Body's favor.

f.   <u>The Defendant's Good Faith in Adopting its Mark</u>

"When analyzing the good faith factor … a court must consider 'whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation

and goodwill…." *Tiffany & Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241, 251 (S.D.N.Y. 2015) (citing *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991)). Additionally, "[e]vidence of intending to compete … does not necessarily indicate bad faith…. Rather, good faith turns on a *showing of intent to deceive purchasers* as to the source of a product." *Id.* (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124-25 (2d Cir. 2001) (emphasis added).

Here, the Court is once again left with virtually no evidence establishing an intent to deceive. On one hand, Perfect Body does not employ doctors, nor does it have any estheticians with the surname Greenberg. *See* Pltfs.' 56.1 ¶ 4; Def.'s 56.1 ¶¶ 13-14. Thus, on its face, the Advertisement appears to be an attempt to lead consumers browsing for Greenberg Cosmetic's services astray. Notwithstanding, Plaintiffs did not submit any evidence substantiating its conclusory claim that "[t]here is no dispute that the mark was adopted in bad faith" because Perfect Body's Campaign was titled "competitors." *See* Pltfs.' Mem. at 9; Pltfs.' Reply at 7. Because an intent to *compete* does not equate to an intent to *deceive*, the Court declines to make the evidentiary leap taken by Plaintiffs. In any event, the Court notes that this factor is "[not] of high relevance to the issue of likelihood of confusion." *Virgin Enterprises Ltd.*, 335 F.3d at 151. Specifically, although a finding of bad faith "can affect the court's choice of remedy or can tip the balance where questions are close[,]" such a conclusion "does not bear directly on whether consumers are likely to be confused." *Id.* (citing *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 102 (2d Cir. 2001)). Because of the limited record concerning Defendant's intent, and

considering the minimal weight given to bad faith in determining a likelihood of confusion, the Court concludes that this factor does not weigh in favor of either party.

g.  The Quality of the Defendant's Product

With respect to quality of the products, the record is similarly devoid of adequate support.  As discussed above, both parties offer "non-invasive laser treatments."  *See* Def.'s 56.1 ¶¶ 10, 12.  In addition, while Plaintiffs are medical doctors who provide "invasive and surgical procedures," Perfect Body does not employ doctors or perform surgical work.  *See id*. ¶¶ 8-9, 13-14.  As to the non-invasive laser treatments that both parties offer, there is no evidence indicating that Plaintiffs are more skilled in these unspecified procedures, nor that doctors in general are more qualified in this respect.  Accordingly, Plaintiffs' unsupported statement that "Plaintiff is a medical doctor, while Defendant is not," *see* Pltfs.' Mem. at 9, holds little weight, especially in light of the parties' failure to expand on the specifics of their businesses.  As a result, this factor does not impact the Court's analysis.

h.  The Sophistication of the Consumers

The sophistication factor "examines the extent to which a buyer evaluates a [service] before purchase."  *CJ Prod. LLC,* 809 F. Supp. 2d at 155 (citing *Kraft Gen. Foods, Inc.,* 831 F. Supp. at 133).  "A trial court must consider the general impression of the ordinary consumer, buying under normal market conditions and giving the attention such purchasers usually give in purchasing the product at issue."  *Streetwise Maps, Inc.*, 159 F.3d at 746 (citing *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 575 (2d Cir. 1993)).  Here, neither party has submitted any evidence as to

the level of sophistication of the consumers at issue. Plaintiffs merely state that that "laser treatments are not targeted towards a specialized sophisticated group, but rather the general populous." S*ee* Pltfs.' Mem. at 9. This argument is without merit as it does not even attempt to quantify the degree of due diligence a consumer in the market for the parties' services conducts. Defendant, on the other, hand asks that the Court "take judicial notice that the majority of consumers interested in plastic surgery will do their homework." *See* Def.'s Opp. at 21. This contention similarly misses the mark. A court "may judicially notice a fact that is not subject to reasonable dispute because it … is generally known within the trial court's territorial jurisdiction; or … can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201. It strains credulity to assume that the sophistication of individuals interested in cosmetic surgery is generally known or readily determinable such that judicial notice is appropriate. Thus, this factor also does not weigh in favor of either party.

### i.    Additional Considerations

Finally, the labeling and segregation of internet advertisements used by search engines is an additional consideration affecting the likelihood of confusion in the context of keyword bidding. *See Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 307 F. Supp. 3d at 299. Specifically, Google's use of "Ad" labels next to its sponsored links "heightens consumers care and attention in clicking on the links, and further diminishes the likelihood of confusion." *Id.* (citing *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1153-54 (9th Cir. 2011)).

In *Alzheimer's*, the court was tasked not just with evaluating the bidding of search keywords in a vacuum, but also to consider the effect of the keyword purchase in conjunction with the resulting advertisements that were displayed. *See* 307 F. Supp. 3d at 299. In that case, after an extensive review of a vast body of evidence presented at a bench trial – including written acknowledgements of confusion, evidence of checks being made payable to improper entities, and the results and accompanying opinion testimony of two consumer survey studies conducted by an economic consulting firm (each of which withstood *Daubert* scrutiny) – the court concluded that no appreciable number of prudent consumers would be confused based on the alleged infringer's keyword advertising campaign. *See* 307 F. Supp. 3d at. at 273-80, 302. In reaching its conclusion, the court acknowledged that a "pure bait and switch scenario" where a defendant purchases a competitor's keyword and then advertises itself as that competitor "with nothing in its ad to distinguish itself" from the senior user, would be a "clear case of infringement." *Id.* at 287. Notwithstanding, "behavior meant to harm a competitor does not necessarily entail infringement if a consumer is unlikely to be confused[,]" and so "the purchase of a competitor's marks as keywords alone, without additional behavior that confuses consumers, is not actionable." *Id.* (collecting cases).

Here, Defendant has admittedly done more than just purchased keywords because its Campaign used Google's keyword insertion feature, causing Dr. Greenberg's surname to be displayed in the headline of the Advertisement. *See* Soric Aff. ¶¶ 10-13. Nevertheless, Perfect Body's Advertisement adequately distinguished

26

itself from the link to Plaintiffs' own website appearing below. Specifically, the Advertisement: (i) was labeled as an "Ad" and segregated from the non-sponsored links; (ii) contained Perfect Body's own URL in the text of the link; and (iii) indicated that its services were "non-surgical," whereas Plaintiffs' links: (i) appeared separately from the sponsored links; (ii) included a link directly to Greenberg Cosmetic's website; and (iii) contained indications that the services offered were surgical and performed by doctors. *See e.g.*, Kreppein Decl. ¶ 4(j), Ex. J. Thus, the Advertisement's distinguishing characteristics minimizes any likelihood of confusion.

### j.    Weighing the Factors

In sum: (i) three factors (strength of mark, actual confusion, and advertisement labeling/segregation) favor Perfect Body; (ii) five factors (proximity, bridging the gap, bad faith, quality, and sophistication) weigh in neither side's favor; and (iii) only one factor (similarity of marks) weighs in Plaintiffs' favor. In balancing the *Polaroid* factors, however, the Court "must focus on the ultimate issue of whether consumers are likely to be confused, rather than a numerical break-down of the factors." *WE Media, Inc. v. Cablevision Sys. Corp.*, 94 F. App'x 29, 33 (2d Cir. 2004). In this regard, the Court concludes that no genuine dispute of fact exists such that a reasonable finder of fact could conclude that consumers are likely to be confused by Perfect Body's Campaign. In making this determination, the Court affords significant weight to the lack of secondary meaning associated with Dr. Greenberg's name (rendering the mark weak), in addition to the sheer lack of any evidence of actual confusion. Accordingly, the Court respectfully recommends that Defendant is

27

entitled to summary judgment dismissing Plaintiffs' Lanham Act cause of action with prejudice.

### B.   Unfair Competition

The Court similarly recommends that Defendant is entitled to summary judgment dismissing Plaintiffs' common law unfair competition claim. "It is well-established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims." *Allied Interstate LLC v. Kimmel & Silverman P.C.*, No. 12-cv-4204, 2013 WL 4245987, at *5 (S.D.N.Y. Aug. 12, 2013) (quoting *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.,* 378 F. Supp. 2d 448, 456 (S.D.N.Y.2005)); *see also Van Praagh*, 993 F. Supp. 2d at 301 (Courts employ substantially similar standards when analyzing claims under Section 43(a) and unfair competition under New York common law) (internal citation omitted). In addition to the federal infringement elements, a plaintiff seeking to establish a common law unfair competition claim must also show that the defendant acted in bad faith. *Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 307 F. Supp. 3d at 302 ("To prevail [on an unfair competition claim], a plaintiff must establish the same elements as under the Lanham Act, *and* demonstrate the defendant's bad faith") (collecting cases) (emphasis in original).

As detailed above, the lack of adequate evidence establishing either the validity of Plaintiffs' purported mark or a likelihood of confusion caused by Defendant's use thereof entitles Perfect Body to summary judgment on the Lanham

Act claim.  *See* Section III(A), *supra*.  Moreover, Plaintiffs' failure to demonstrate Defendant's bad faith, *see* Section III(A)(ii)(f), further undermines their unfair competition cause of action.  Accordingly, for the same reasons that the Lanham Act claim should be dismissed, the Court respectfully recommends dismissing Plaintiffs' unfair competition claim with prejudice.

## C.   New York Civil Rights Law Sections 50 and 51

Finally, the Court respectfully recommends that Perfect Body is entitled to summary judgment dismissing Plaintiffs' N.Y. Civil Rights Law §§ 50 and 51 cause of action with prejudice.

Section 50 of the New York Civil Rights law prohibits the use of a living person's name, portrait, or picture – for the purposes of advertising or trade – without having first obtained their written consent.  N.Y. Civil Rights Law § 50.  Section 51 provides for a private cause of action for such violations.  *See id.* § 51; *see also Groden v. Random House, Inc.*, 61 F.3d 1045, 1048-49 (2d Cir. 1995).  "The statute not only encompasses a right to privacy … *but also encompasses a right to publicity*, which protects the proprietary nature of [an individual's] public personality."  *DeClemente*, 860 F. Supp. at 52 (citing *Brinkley v. Casablancas*, 80 A.D.2d 428, 438, 438 N.Y.S.2d 1004, 1009-10 (1st Dep't 1981)) (emphasis added).  "The definition of a person's 'name' under the statute has been construed nearly literally such that only the use of a 'full' name, not just a surname is actionable."  *Champion v. Take Two Interactive Software, Inc.*, No. 158429-2018, 2019 WL 2079889, at *5 (N.Y. Cty. Sup. Ct. May 10, 2019) (citing *Lombardo v. Doyle, Dane & Bernbach, Inc.*, 58 A.D.2d 620, 622, 396 N.Y.S.2d

661 (2d Dep't. 1977)); *see also People v. Scribner's Sons*, 205 Misc. 818, 822, 130 N.Y.S.2d 514 (N.Y. Magis. Ct. 1954) ("the word 'name' as used in the statute means a person's full name and not merely his surname … unless … the surname standing alone has been so used by the complainant as to be well known to the public as identifying the complainant") (internal citations omitted).

Here, there is no allegation or evidence that Perfect Body used Dr. Greenberg's full name – Stephen T. Greenberg, M.D – in any capacity. Instead, Plaintiffs merely contend that, in connection with its Campaign, Defendant used Dr. Greenberg's surname or variations thereof for its keyword searches and the resulting Advertisement. In addition, there are other Dr. Greenbergs practicing medicine in New York, including Stephen's brother, Burt Greenberg, another plastic surgeon on Long Island, *see* Shindel Opp. Aff. ¶ 13, Ex. 10, undermining any claim that Dr. Greenberg's surname could identify only him. Accordingly, Perfect Body has not used Dr. Greenberg's name in a manner that violates the New York Civil Rights Law.

Plaintiffs' reliance on *Orsini v. E. Wine Corp.*, 190 Misc. 235, 73 N.Y.S.2d 426 (Sup. Ct. 1947), *aff'd*, 273 A.D. 947, 78 N.Y.S.2d 224 (App. Div. 1948), for the proposition that a surname alone is a sufficient identifier is misguided. *See* Pltfs.' Reply at 11. In *Orsini*, the court found the use of a surname actionable, but only because it was used in conjunction with the plaintiff's unique coat of arms when the defendant affixed both to its wine labels. *See* 190 Misc. at 235 73 N.Y.S.2d at 426. Here, no such additional identifier was used by Perfect Body. Additionally, Plaintiffs' argument that searching for Dr. Greenberg displays both Perfect Body's

30

advertisement as well as his picture misses the mark. *See* Reply Declaration of Scott J. Kreppein ("Reply Decl."), DE [64-38], Ex. B, DE [64-41], ("Google Search Results"). The Google Search Results show several hits – one such result is Perfect Body's sponsored link, and another, separate from the Advertisement, is a picture of Dr. Greenberg. The picture does not appear as a part of Defendant's Advertisement in any capacity. Thus, the Court concludes that Perfect Body has not used additional identifying information in connection with Dr. Greenberg's name such that Plaintiffs are entitled to protection under the statute. Accordingly, the Court respectfully recommends dismissing Plaintiffs' N.Y. Civil Rights Law §§ 50 and 51 cause of action with prejudice.

## IV.   Conclusion

For the reasons set forth above, the Court respectfully recommends: (i) denying Plaintiffs' Motion its entirety; and (ii) granting Defendant's Motion and dismissing this action with prejudice.

## V.   Objections

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v.*

*Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60

(2d Cir. 1996).

Dated:      Central Islip, New York
            July 2, 2019                      /s/ Steven I. Locke
                                              STEVEN I. LOCKE
                                              United States Magistrate Judge